## James B. Fiske *versus* Joseph C. Stevens.

In an action by the payee of a draft against the drawer, where it appeared that the plaintiff was one of two assignees of the effects of the acceptor, *it was held*, that the burthen of proof was on the defendant, to show that the plaintiff, as assignee, had funds in his hands to go, either wholly or partially, to pay the draft.

Where an assignment of his effects was made by the acceptor of a draft for the benefit of his creditors, containing a release of the debtor from all his liabilities; and the payee of the draft, with the verbal approbation of the drawer, wrote upon the assignment in the list of creditors, a description of the draft, " for whom it might concern ;" *it was held*, that this would not discharge the drawer from his liability.

Assumpsit against the defendant as drawer of a draft of which a copy follows: — "Bangor, December 27, 1837. Six months from date, value received, please pay to the order of James B. Fiske, at the Eagle Bank, Boston, fifteen hundred dollars, and much oblige your obedient servant, J. C. Stevens. To Mr. Charles H. Hammond, Merchant, Bangor, Maine." It was accepted by Hammond, and indorsed by Fiske. The draft was read in evidence, and a demand and notice proved. Hammond was then called as a witness by the defendant, and testified, that in Dec. 1837, he applied to Fiske and Stevens to be sureties for him on a note; that the person of whom he had the money preferred a draft instead of a note; that thereupon he made out a draft, because it could be negotiated easier than a note; that he made the draft without reflection, supposing it would make no difference as to the liability of either Fiske or Stevens; that he, Hammond, failed and made an assignment of his property to the plaintiff and G. W. Brown, June 18, 1838. To the admission of all or any of this testimony the plaintiff objected, as going to explain, alter,

or vary the legal effect of the draft, and the signatures to the same. The plaintiff then produced the assignment and it appeared thereby, that under the list of creditors, parties to the assignment, there was the following entry in the handwriting of the plaintiff. "J. C. Stevens' dft. indorsed by James B. Fiske, payable at the Eagle Bank, Boston, for $1500, for whom it may concern." The assignment contained a release of all claims against Hammond. Hammond testified, that he had a conversation with both Fiske and Stevens in relation to their becoming parties to the assignment on account of this draft; that Stevens thought it would be best to have the draft put into the assignment, but expressly declined to sign it himself; that this was on the last day in which parties could come into the assignment; that he saw Fiske, after seeing Stevens, told him what Stevens had said respecting the draft, and stated also, that he did not view the remarks of Stevens in the light of a communication to be made to Fiske; and that Fiske thought it was best to have it in the assignment. Hammond had the whole amount of the money for the draft, neither Fiske nor Stevens receiving any part.

The counsel for the defendant then contended, that upon the evidence the plaintiff could not recover; that if the plaintiff was entitled to recover any thing, it could be only one half the amount of the draft; that the plaintiff having introduced the assignment of Hammond's effects to Brown and himself, the burthen of proof was on him to show, that he had not sufficient to pay this draft or a portion thereof. The Court was then holden by SHEPLEY J. who instructed the jury, that the burthen of proof was upon the defendant to show, that the plaintiff had received sufficient, or any amount for the purpose; that upon the evidence, if they believed it, they must find for the plaintiff the amount of the draft and damages, and interest; that the law supposed every person to be acquainted with legal obligations; and that the defendant having signed as drawer and the plaintiff as indorser, the agreement or understanding stated by the witness, that they were to be sureties only, would not affect their liabilities.

The jury returned a verdict for the plaintiff for the full amount; and to an inquiry they had been requested, before going out, to answer, stated that, "they were not satisfied from the evidence, that there was any agreement, which would make the parties liable in any way different from what the law supposes."

*M. L. Appleton,* for the defendant, argued in support of the grounds taken at the trial; and cited 13 Mass. R. 138; 5 Serg. & R. 363; 10 Pick. 528; ib. 533; 10 Johns. R. 595.

*T. McGaw* argued for the plaintiff, and cited 19 Pick. 227; 11 Pick. 316; *Hunt* v. *Adams,* 7 Mass. R. 519; *Richards* v. *Killam,* 10 Mass. R. 239; *Eaton* v. *Emerson,* 14 Maine R. 340; *Church* v. *Barlow,* 9 Pick. 547; 3 Kent, 114; Bayley on B. 151, 192, 468; *Lincoln* v. *Bassett,* 23 Pick. 154.

The opinion of the Court was drawn up by

WHITMAN C. J. — The defendant contends that the verdict should not have been returned for the plaintiff, because he was one of the assignees of the effects of one Hammond, the acceptor of the draft declared upon, and has not yet accounted for the proceeds of those effects; so that it does not appear, but that he has realized enough to pay the draft.

The Judge at the trial ruled, and we think very properly, that, if there was any thing in the plaintiff's hands, which should go, either wholly or partially to the discharge of this draft, it was incumbent on the defendant to produce the evidence of it. This, it would seem, might easily have been done by calling on the other assignee to testify to the amount of assets received, and of the disposition of them; and thereby, to have shown whether the plaintiff had availed himself of any thing towards the draft or not.

It is next objected that as the plaintiff was assignee of said effects, and executed said agreement, which contained a release of Hammond from all his liabilities, he thereby discharged the defendant from his liability on the draft, he being merely an accommodation drawer for the benefit of Hammond, while

the plaintiff was an accommodation payee who had indorsed the bill for the like purpose.

It appears that the plaintiff executed the assignment, not absolutely as a creditor, as it respects this draft. He inserted the claim in the assignment as being for the benefit of whom it might concern ; and it appears further, that it was put into the assignment by concert between the plaintiff and defendant, with a view obviously, that whatever of dividend might be realized on account of it, should be applied in diminution of the amount ultimately payable by the person liable in the last resort.

The salvo in the plaintiff's subscription, especially if it be taken in connection with the defendant's express wishes indicated in the testimony of Hammond, and communicated to the plaintiff, may well be considered as to the same effect, as it respects the liability of the defendant, as the one described in *Gloucester Bank* v. *Worcester*, 10 Pick. 528. The Court in that case say, " we think that it is very clear, from the assignment or indenture itself, independently of the parol evidence, that the plaintiffs did not intend to discharge the defendant from his liability as indorser, and that the discharge contained therein, of the maker by the plaintiffs, was by the approbation of the defendant."

Whenever the intent of the parties can be ascertained by an inspection of an instrument, it should prevail over phraseology of a seemingly different import. From an inspection of the assignment in evidence, no one could fail to understand, that it was no part of the intention of the plaintiff's subscription to it, to discharge any party to the bill in question, who might ultimately be liable to him thereon. This ground of defence, therefore we think, was not sustained.

The last objection urged by the defendant is, that at any rate, he was but in the condition of a surety with the plaintiff, and that, at most, the plaintiff can only recover of him the one half of the amount he may have been compelled to pay to take up the draft.

The fact necessary to sustain this ground of defence was negatived by the jury, which must be regarded as taking away the foundation, upon which alone, the position contended for, could be maintained.

On the whole, we think that the verdict must remain undisturbed, and judgment must be entered thereon.